**Affirmed and En Banc Opinion and En Banc Dissenting Opinion filed June 27, 2013.**

In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00303-CV

---

### WASHINGTON DC PARTY SHUTTLE, LLC, PARTY SHUTTLE TOURS, LLC AND CREATIVERSE INTERNET SYSTEMS, LLC, Appellants

### V.

### IGUIDE TOURS, LLC, TYREE COOK, AND ABISE ESHETU, Appellees

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2012-12924**

---

## EN BANC OPINION

In this suit arising from the alleged breach of confidentiality agreements and theft of trade secrets, three related companies sued two nonresident former employees and the foreign company that the former employees established. In this

interlocutory appeal, the plaintiffs challenge the content and form of the trial court's order granting the new company's special appearance and a separate ruling partially denying their request for a temporary injunction.

On our own motion, we have decided this case en banc in order to answer an error-preservation question on which courts have reached conflicting results: to preserve a complaint for appeal that an affidavit fails to reveal the basis of the affiant's personal knowledge of the stated facts, is it necessary to object and obtain a ruling? We conclude that it is.

We hold that the trial court did not err in determining that it lacked personal jurisdiction over the new corporation, and that the plaintiffs failed to preserve their complaint about the form of the order granting the special appearance. We therefore affirm the trial court's special-appearance ruling. We further hold that the trial court did not abuse its discretion in partially denying the plaintiffs' request for a temporary injunction, and we affirm that ruling as well.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Washington DC Party Shuttle, LLC ("DC Party Shuttle"), Party Shuttle Tours, LLC and Creativerse Internet Systems, LLC ("Creativerse," collectively "the Shuttle Parties") filed suit against appellees IGuide Tours, LLC ("IGuide"), Tyree Cook, and Abise Eshetu (collectively "the IGuide Parties"), asserting claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets. The Shuttle Parties also sought a temporary restraining order and temporary and permanent injunctions. According to the pleadings, DC Party Shuttle is a District of Columbia limited liability company with a principal place of business in the District of Columbia; Party Shuttle Tours, LLC is a Delaware limited liability company with a principal place of business in

2

Houston, Texas; Creativerse is a Texas limited liability company with a principal place of business in Houston, Texas. As described by the Shuttle Parties in their live pleadings, these entities operate through a "network of companies that do business as OnBoard Tours." The record reflects that DC Party Shuttle and Party Shuttle Tours are primarily engaged in the business of providing sightseeing tours, and that Creativerse owns and markets the websites for all of the OnBoard Tours companies.

The Shuttle Parties allege that Cook and Eshetu are residents of Virginia and former employees of DC Party Shuttle and Creativerse. According to the Shuttle Parties, Cook and Eshetu each signed a non-compete agreement with both DC Party Shuttle and Creativerse. Under the terms of these agreements, each was prohibited primarily from (a) engaging in a competing tour business or internet marketing business for three years following separation from the Shuttle Parties' employment, (b) misusing confidential information, or (c) soliciting and hiring other employees of the Shuttle Parties. The Shuttle Parties allege that on December 1, 2011, Cook and Eshetu created IGuide, a competing sightseeing tour company, while they were still employed by two of the Shuttle Parties.

Cook and Eshetu left their respective employment with the Shuttle Parties on February 15, 2012. Two weeks later, IGuide began operating sightseeing tours employing other former employees of the Shuttle Parties. The Shuttle Parties filed suit the next day and obtained a temporary restraining order.

## A.   IGuide's Special Appearance

In their original petition, the Shuttle Parties' jurisdictional allegations against IGuide consist solely of the statements that "this proceeding arises out of the business done in Texas and torts committed in Texas" and that the trial court

"has personal jurisdiction over IGuide because it is conducting business in Texas by marketing its services in Texas through a website and because it is conspiring with Defendants Cook and Eshetu to commit torts in Texas." IGuide challenged the trial court's exercise of personal jurisdiction over it by filing a special appearance supported by an affidavit from Sewunet Habte, a current IGuide employee and former employee of one or more of the Shuttle Parties.[1] The Shuttle Parties responded that the trial court should deny the special appearance for a variety of procedural and substantive reasons. The trial court granted IGuide's special appearance. In its signed order, the trial court stated that "[a]ll of Plaintiffs' causes of action that have been or could have been asserted against [IGuide] are DISMISSED WITH PREJUDICE for lack of jurisdiction and Plaintiffs shall recover nothing from [IGuide] for the causes of action alleged or that could have been alleged."

## B.    Injunctive Relief

The Shuttle Parties obtained a temporary restraining order on the day they filed suit and later sought and obtained an extension of that order. The Shuttle Parties also sought a temporary injunction primarily to enjoin the IGuide Parties from using allegedly confidential internet-marketing information and from operating or marketing sightseeing tours in Washington, D.C. and certain other locations.

At the time of the hearing on the Shuttle Parties' request for a temporary injunction, only Cook and Eshetu remained as defendants. The trial court granted the temporary injunction in what the Shuttle Parties characterize as "a very limited

---

[1] Cook and Eshetu did not dispute the trial court's exercise of personal jurisdiction over them.

4

form." As reflected in the trial court's order, the trial court granted injunctive relief to Creativerse regarding the allegedly confidential internet-marketing information, and denied the request for injunctive relief "regarding sightseeing, tour and/or shuttle bus activities in competition with" DC Party Shuttle and Party Shuttle Tours.

## II. ISSUES PRESENTED

In their first issue, the Shuttle Parties contend that the trial court erred in granting IGuide's special appearance. In their second issue, they argue in the alternative that the form of the special-appearance order is erroneous. They assert in their third issue that the trial court erred in rendering a temporary injunction that fails to maintain the status quo.

## III. SPECIAL APPEARANCE

The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' exercise of personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Those requirements are fulfilled if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Minimum contacts are sufficient to support the exercise of personal jurisdiction if they show that the nonresident defendant has "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

5

protections of its laws. *See id.* at 319, 66 S. Ct. at 160; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The "purposeful availment" inquiry is a three-pronged test. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). First, only the defendant's contacts with the forum are relevant. *Id.* Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the 'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Id.* (quoting *Michiana Easy Livin' Country*, 168 S.W.3d at 785); *Motor Components, LLC v. Devon Energy Corp.*, 338 S.W.3d 198, 201–02 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Personal jurisdiction may be "general" or "specific." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). A trial court properly may exercise general jurisdiction over a defendant whose contacts with the forum state have been continuous and systematic. *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 796. When there is a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation, a trial court properly may exercise specific jurisdiction over the defendant. *Moki Mac*, 221 S.W.3d at 585.

A defendant challenging a Texas court's exercise of personal jurisdiction over him must negate all jurisdictional bases alleged. *BMC Software*, 83 S.W.3d at 793; *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995) (orig. proceeding). The plaintiff has the initial burden of pleading sufficient facts to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793; *Brocail v. Anderson*, 132 S.W.3d 552, 556 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the plaintiff fails to do so, then proof of the defendant's nonresidency is sufficient to negate personal

jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). If the plaintiff does allege sufficient jurisdictional facts, then the defendant can defeat jurisdiction in several ways. The defendant can introduce evidence disproving the plaintiff's factual allegations,[2] or show that the defendant's contacts with the forum state "fall short of purposeful availment,"[3] or demonstrate that "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction."[4] If specific jurisdiction is at issue, then the defendant also can show that the plaintiff's claims do not arise from the defendant's contacts with Texas.[5]

## A. Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794. Where, as here, the trial court issued no findings of fact or conclusions of law, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *BMC Software*, 83 S.W.3d at 795. If the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence. *Id.*; *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.). On appeal, the scope of review includes all evidence in the record. *Horowitz*, 377 S.W.3d at 122

---

[2] *See Parker v. Robert Ryan Realtors, Inc.*, No. 14-10-00325-CV, 2010 WL 4226550, at *3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2010, no pet.) (mem. op.) ("[B]oth parties can present evidence either proving or disproving the allegations.") (citing *Kelly*, 301 S.W.3d at 659).

[3] *Kelly*, 301 S.W.3d at 659.

[4] *Id.*

[5] *Id.*

(citing *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied)).

We review the challenged factual findings by applying the same standards used in reviewing jury findings. *Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 860 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* We will conclude that the evidence is legally insufficient to support the implied finding only if (a) there is a complete absence of evidence of a vital fact, (b) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. In reviewing the implied findings for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Meehl v. Wise*, 285 S.W.3d 561, 565 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)). The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

We review the trial court's conclusions of law de novo. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 730 (Tex. App.—Houston [14th Dist.] 2008, no pet.). If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Worford v.*

8

*Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Aduli v. Aduli*, 368 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## B.     Notice of the Hearing

The Shuttle Parties first assert that the trial court erred in granting IGuide's special appearance because they received only five days' notice of the special-appearance hearing instead of the six days' notice they contend is required where, as here, notice of the hearing was served via fax. *See* TEX. R. CIV. P. 21 (setting forth the general rule that a notice of a hearing "shall be served upon all other parties not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court"); TEX. R. CIV. P. 21a ("Whenever a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon by . . . [fax], three days shall be added to the prescribed period."). The rules specifically provide, however, that the trial court may shorten the notice period. *See* TEX. R. CIV. P. 21. Unless the circumstances are such that the trial court would abuse its discretion in going forward with the hearing on only five days' notice, we will not disturb its decision to do so. *See In re K.A.R.*, 171 S.W.3d 705, 713 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (no abuse of discretion in shortening notice period for sanctions hearing to four days).

The Shuttle Parties have not explained why, under the circumstances presented here, the trial court abused its discretion in permitting the hearing to go forward. The Shuttle Parties did not move to continue the hearing, and they do not contend that they needed additional time to respond. In fact, the record shows that they filed (a) an eleven-page response just two days after IGuide filed its special appearance, (b) an additional four-page bench brief on the day of the hearing, and

(c) a further four-page post-hearing brief on the day after the hearing. Under the circumstances, we hold that the trial court did not abuse its discretion.

## C. Verification of the Special Appearance

The Shuttle Parties next assert that the trial court's order sustaining IGuide's special appearance must be reversed because, as they pointed out in the trial court, the special appearance was not made by a sworn motion. *See* TEX. R. CIV. P. 120a ("Such special appearance shall be made by sworn motion . . . and may be amended to cure defects."). Citing *Casino Magic Corp. v. King*,[6] the Shuttle Parties argue that the affidavit in support of the special appearance does not properly verify the special appearance to which it was attached because Habte attested that the facts set out in the affidavit were within her personal knowledge and were true and correct, but she did not similarly verify the facts set out in the special appearance itself.

This case is factually distinguishable from *Casino Magic Corp*. The reviewing court in *Casino Magic Corp.* noted that "the special appearance included a number of jurisdictional 'facts' which the witness failed to attest to in the affidavit."[7] In this case, however, IGuide stated in its special appearance that

- it was formed under the laws of the State of Delaware and is registered in the District of Columbia;

- its members were and are residents of Maryland and Virginia at all times relevant to this case;

- it never has had any contractual relationship with any of the Shuttle Parties;

---

[6] 43 S.W.3d 14, 18 (Tex. App.—Dallas 2001, pet. denied) (sub. op.).

[7] *Id.*

10

- it has never sued anyone in a Texas court and has not previously been sued in a Texas court;

- it does not maintain offices in Texas;

- it does not conduct business here;

- it does not maintain a corporate registration in Texas with the Texas Secretary of State;

- it does not have an agent for service of process in Texas;

- it does not have any employees in Texas;

- it does not have bank accounts in Texas;

- it does not does not own or maintain warehouses or inventory in Texas; and

- it does not specifically target Texas with advertising.

In her affidavit, Habte attested to the truth of each of these facts. On appeal, the Shuttle Parties do not identify any jurisdictional fact that is stated in IGuide's special appearance that is not repeated and sworn to by Habte in her affidavit. We therefore conclude that the affidavit sufficiently verified the special appearance. *See Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *2 (Tex. App.—San Antonio 2010, no pet.) (mem. op.).

## D.     Timeliness of the Special-Appearance Affidavit

The Shuttle Parties also assert that the trial court erred in holding a hearing on the special appearance because IGuide's supporting affidavit was not served seven days before the hearing as required by Rule 120a(3). In the trial court, however, they did not argue that the timing of the affidavit required that the hearing be postponed; they argued that because IGuide served the affidavit less than seven days before the special-appearance hearing, its special appearance was converted to a general appearance. Because the complaint presented on appeal does not comport with the Shuttle Parties' objection in the trial court, it has not

11

been preserved for our review. *See* Tex. R. App. P. 33.1(a); *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

## E.     Content of the Special-Appearance Affidavit

In addition to their complaints about alleged procedural defects, the Shuttle Parties argue that the content of Habte's affidavit was inadequate to meet IGuide's burden of proof. We address each of these arguments separately.

### 1.     *Personal Knowledge*

The Shuttle Parties contend that Habte's affidavit does not show that she is personally familiar with the facts to which she attested. On our own motion, we have considered this case en banc to address the question of whether a party must preserve such a complaint in the trial court by obtaining a ruling—or a refusal to rule—on a timely and specific objection. *See* Tex. R. App. P. 33.1(a).

The cases in which such complaints have been addressed do not provide a clear and consistent answer to the error-preservation question. The Texas Supreme Court has held that lack of personal knowledge renders an affidavit legally insufficient. *See, e.g.*, *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010) (op. on reh'g); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). These holdings are not new, and do not answer this error-preservation question. The court has stated on numerous occasions that an affidavit showing a lack of personal knowledge is incompetent or legally insufficient. *See, e.g.*, *Laidlaw Waste Sys., (Dall.), Inc., v. City of Wilmer*, 904 S.W.2d 656, 661 (Tex. 1995);[8] *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam)

---

[8] There the court stated as follows:

12

(orig. proceeding);[9] *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex. 1988) (per curiam);[10] *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984);[11] *Burke v. Satterfield*, 525 S.W.2d 950, 954–55 (Tex. 1975).[12] But the court also has concluded that a party must object to an affiant's lack of personal knowledge and obtain a ruling on the objection to preserve error. *See Grand*

---

> The sworn statement of one Larry Conwell states only "that he is personally familiar" with the following "facts": "[t]he area proposed for annexation by defendant exceeds the statutory maximum one-half mile limitation," and that the "boundary described by the metes and bounds contained in defendant's proposed ordinance does not close." These conclusory averments would be insufficient even if set out in a separate affidavit. There is no indication that Larry Conwell is competent to testify as to either of these matters.

*Laidlaw Waste Sys.*, 904 S.W.2d at 661.

[9] There, the court stated, "An affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally insufficient." *Humphreys*, 888 S.W.2d at 470. The court held that the affidavits at issue provided no evidentiary support because "the affiant's statements are based on his 'own personal knowledge and/or knowledge which he has been able to acquire upon inquiry' and, hence, fail to unequivocally show that they are based on personal knowledge. Additionally, the affidavits provide no representation whatsoever that the facts disclosed therein are true." *Id.*

[10] The court held that the affidavit of a listener to a radio station was inadequate to controvert an affidavit offered by the radio station where the listener's affidavit failed to establish personal knowledge of the business practices of record companies or of the radio station. *See Radio Station KSCS*, 750 S.W.2d at 761–62.

[11] The court explained that "[u]nless authorized by statute, an affidavit is insufficient unless the allegations contained therein are direct and unequivocal and perjury can be assigned upon it." *Brownlee*, 665 S.W.2d at 112. The affidavit at issue in the case "[did] not positively and unqualifiedly represent the 'facts' as disclosed in the affidavit to be true and within [the affiant's] personal knowledge. The statements made in the affidavit lack[ed] the necessary factual specificity." *Id.*

[12] In *Burke*, an executrix submitted accounting supported by an affidavit that "was signed by her attorney and stated that he had 'read the accounting and allegations set out thereunder and same are true and correct to the best of his knowledge.'" *Burke*, 525 S.W.2d at 954–55. The court explained that the affidavit was insufficient because it "would not appear to positively and unqualifiedly represent the facts as disclosed in the accounting to be true and within the personal knowledge of the affiant." *Id.* at 955.

*Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990). In *Vaughan*, the court wrote as follows:

> It is clear from reading the entire affidavit that [the affiant] was testifying from personal knowledge and was competent to testify regarding the matters stated. *Even if these elements were not shown on the face of the affidavit, Vaughan's failure to object to these defects in form resulted in waiver.*

*Id.* (emphasis added).

In the years since *Vaughan* was decided, the Texas Supreme Court has neither cited that case nor explicitly overruled it. Nevertheless, five years after *Vaughan*, the Texas Supreme Court—without discussing error preservation—agreed with the Fifth Court of Appeals in holding that the summary-judgment affidavits challenged in *Laidlaw Waste Systems* were defective for reasons that included the conclusory nature of the affiant's statements and the absence of any indication that the affiant was "competent to testify" on the matters described in the affidavit.[13] *See Laidlaw Waste Sys.*, 904 S.W.2d at 660–61. Although not discussed in the Texas Supreme Court, the Fifth Court of Appeals held in that case that "[t]o be competent summary[-]judgment evidence, an affidavit must set forth the basis on which the affiant had personal knowledge of the facts asserted." 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994, pet. granted), *aff'd*, 904 S.W.2d 656 (Tex. 1995). The intermediate court further stated that an affidavit that fails to disclose that the affiant has personal knowledge of the facts asserted suffers from a substantive defect that may be raised for the first time on appeal. *Id.* Because the challenged affidavit was not based on personal knowledge, the intermediate

---

[13] *See* TEX. R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

14

appellate court concluded that the affidavits were not competent summary-judgment evidence. *Id.*

The Texas Supreme Court did not specifically state—in *Laidlaw Waste Systems* or elsewhere—that no objection is required to preserve an argument that an affidavit is fatally defective if it fails to show the basis of the affiant's personal knowledge of the stated facts. It did not address error preservation in *Kerlin*, *Humphreys*, or *Brownlee*, and the opinions of the intermediate appellate courts in these cases were silent on this point. Moreover, in the Texas Supreme Court cases cited above, the court either found multiple reasons to reject the affidavits, or the affidavit itself showed a lack of personal knowledge. *See, e.g.*, *Marks*, 319 S.W.3d at 666 (statement from lawyer regarding his belief about prior lawyer's intent based on review of case file is not an assertion of fact based on personal knowledge); *Kerlin*, 274 S.W.3d at 667–68 (witness's affidavit concerning alleged fraud said to have been committed in 1847 could not possibly be based on personal knowledge and was based on hearsay, and opposing party raised a hearsay objection in the trial court); *Laidlaw*, 904 S.W.2d at 661 (affidavit was conclusory); *Humphreys*, 888 S.W.2d at 470–71 (affidavit was based on affiant's "'own personal knowledge and/or knowledge which he has been able to acquire upon inquiry'" and contained no representation that the recited facts were true); *Radio Station KSCS*, 750 S.W.2d at 761–62 & n.3 (listener of radio station showed no personal knowledge as to business practices of the radio station and did not claim to have worked for a radio station; radio station also objected in the trial court to hearsay); *Brownlee*, 665 S.W.2d at 112 (affidavit contained legal conclusions, lacked factual specificity, and did not contain a positive and unqualified representation that the "facts" were true and within affiant's personal knowledge); *Burke*, 525 S.W.2d at 955 (affidavit of attorney failed to show that an

15

accounting by another person was true and within the affiant's personal knowledge).[14]

The Texas Supreme Court rarely discusses error preservation, but leaving the subject to the intermediate appellate courts has produced conflicting results. In the summary-judgment context, the language of Texas Rule of Civil Procedure 166a seems to indicate that one must object to a defective affidavit. *Compare* TEX. R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") *with id.* ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). The intermediate courts have concluded that a defect in the form of the affidavit must be preserved by an objection in the trial court, but a defect to the affidavit's substance may be raised for the first time on appeal. *See, e.g.*, *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.); *Landry's Seafood Rests., Inc. v. Waterfront Cafe, Inc.*, 49 S.W.3d 544, 551 (Tex. App.—Austin 2001, pet. dism'd); *Progressive Cnty. Mut. Ins. Co. v. Carway*, 951 S.W.2d 108, 117 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

The courts of appeals—including this one—have cited *Vaughan* many times, specifically holding that a party must object to the affiant's lack of personal knowledge and obtain a ruling in the trial court to preserve error. *See, e.g.*, *Hill v. Tootsies, Inc.*, No. 14-11-00260-CV, 2012 WL 1694372, at *2 (Tex. App.—

---

[14] In contrast, Habte's affidavit shows that she was employed in a business in which she may well have gained personal knowledge of the asserted facts, and does not indicate that she lacked personal knowledge; it is simply silent on the matter.

Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.); *Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Mallory v. Mallory*, No. 14-06-01009-CV, 2009 WL 1886110, at *1 (Tex. App.—Houston [14th Dist.] July 2, 2009, no pet.) (sub. mem. op.); *Butler v. Hudson & Keyse, L.L.C.*, No. 14-07-00534-CV, 2009 WL 402329, at *2 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009, no pet.) (mem. op.); *Peterson Homebuilders, Inc. v. Timmons*, No. 14-03-00400-CV, 2004 WL 1660936, at *4 n.2 (Tex. App.—Houston [14th Dist.] July 27, 2004, no pet.) (mem. op.); *Garza v. Wilson*, No. 14-98-00928-CV, 2000 WL 64052, at *2–3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2000 no pet.) (not designated for publication); *Seitsinger v. City of Lake Jackson*, No. 14-95-01475-CV, 1997 WL 334875, at *4 (Tex. App.—Houston [14th Dist.] July 19, 1997, no writ) (not designated for publication); *Carway*, 951 S.W.2d at 117.

We also followed *Vaughan* in *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 & n.9 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We have never characterized this ruling as dicta, but instead have treated it as binding authority. *See, e.g.*, *Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 WL 2986379, at *11 n.12 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.); *N. Hous. Int'l, L.L.C. v. PW Real Estate Invs., Inc.*, No. 14-02-00078-CV, 2003 WL 22453796, at *3 n.5 (Tex. App.—Houston [14th Dist.] Oct. 30, 2003, pet. denied) (mem. op.). Even when we have not specifically cited *Vaughan*, we have continued to follow its teaching, and when we addressed an appellate complaint that an affidavit was not based on personal knowledge, we frequently noted that this complaint had been preserved by an objection in the trial court. *See, e.g.*, *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting that the trial court had overruled

17

the appellant's objection that a summary-judgment affidavit was not based on personal knowledge); *Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *2 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (mem. op.) ("Because [the appellant] objected to the affidavit in the trial court below, the objection [regarding the lack of personal knowledge] is preserved for appeal.").

Our sister court, the First Court of Appeals, also has cited *Vaughan* many times, specifically holding that to preserve error, one must object to the affiant's lack of personal knowledge. *See Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st Dist.] 1997, no writ). The *Rizkallah* court specifically discussed *Vaughan* and *Laidlaw Waste Systems* and concluded that *Vaughan* was the better rule. *Id.* The First Court continues to follow *Rizkallah* and *Vaughan. See Underwater Servs., Inc. v. Offshore Drilling Co.*, No. 01-11-00889-CV, 2013 WL 2096640, at *5 n.4 (Tex. App.—Houston [1st Dist.] May 14, 2013, no pet.) (mem. op.); *In re Higby*, No. 01-11-00946-CV, 2012 WL 6625028, at *3 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, orig. proceeding); *Colvin v. Tex. Dow Emps. Credit Union*, No. 01-11-00342-CV, 2012 WL 5544950, at *4 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op.). The Thirteenth Court of Appeals also has considered the split of authority and concluded that *Vaughan* is controlling. *See Bauer v. Jasso*, 946 S.W.2d 552, 557 (Tex. App.—Corpus Christi 1997, no writ).[15] The Second,[16] Fourth,[17] Fifth,[18] Sixth,[19] Seventh,[20] Tenth,[21] and

---

[15] *See also Danevang Farmers Coop. Soc'y v. Indeco Prods., Inc.*, No. 13-04-445-CV, 2006 WL 2885058, at *2–3 (Tex. App.—Corpus Christi Oct. 12, 2006, no pet.) (mem. op.); *Williams v. State*, 114 S.W.3d 703, 709 n.4 (Tex. App.—Corpus Christi 2003, no pet.); *Flanagan Bros., Inc. v. Gomez*, No.13-97-050-CV, 1998 WL 35276220, at *2 (Tex. App.—Corpus Christi June 25, 1998, no pet.) (not designated for publication).

[16] *See Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 WL 2651865, at *2 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.); *A.J. Morris, M.D., P.A. v. De Lage Landen Fin. Servs., Inc.*, No. 2-06-430-CV, 2009 WL 161065, at *4 & n.12 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.).

Eleventh[22] Courts of Appeals all have followed *Vaughan* or its progeny. The Third[23] and Eighth[24] Courts of Appeals also have discussed the split of authority, but have resolved the conflict in favor of treating an objection based on the lack of personal knowledge as a defect in substance. Given the inconsistent results reached by different courts—and, no doubt, even within our own court—we

---

[17] *See, e.g.*, *Marin v. Herron*, No. 04-11-00352-CV, 2012 WL 3205427, at \*4 (Tex. App.—San Antonio Aug. 8, 2012, no pet.) (mem. op.); *In re Evolution Petroleum Co.*, 359 S.W.3d 710, 713 n.2 (Tex. App.—San Antonio 2011, orig. proceeding); *Celadon Trucking Servs., Inc. v. Lugo's Sec. Agency*, No. 04-05-00018-CV, 2005 WL 2401886, at \*3 n.3 (Tex. App.—San Antonio Sept. 28, 2005, no pet.) (mem. op.); *Robinson v. Bank One Nat'l Assoc.*, No. 04-03-00343-CV, 2004 WL 28367, at \*2 (Tex. App.—San Antonio Jan. 7, 2004, pet. denied) (mem. op.); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 433 (Tex. App.—San Antonio 1993, writ denied).

[18] *See, e.g.*, *Four D. Constr. Inc. v. Util. & Envtl. Servs., Inc.*, No. 05-12-00068-CV, 2013 WL 2563785, at \*2 (Tex. App.—Dallas June 7, 2013, no pet. h.) (mem. op.); *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 697 (Tex. App.—Dallas 2008, no pet.); *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.); *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.).

[19] *See, e.g.*, *Sundance Res., Inc. v. Dialog Wireline Servs., L.L.C.*, No. 06-08-00137-CV, 2009 WL 928276, at \*5 (Tex. App.—Texarkana Apr. 8, 2009, no pet.) (mem. op.); *Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461, 468 (Tex. App.—Texarkana 2004, pet. denied); *Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909, 913–14 (Tex. App.—Texarkana 1998, no pet.).

[20] *See Calp v. Tau Kappa Epsilon Fraternity*, 75 S.W.3d 641, 645 (Tex. App.—Amarillo 2002, pet. denied).

[21] *See, e.g.*, *Wolfe v. Devon Energy Prod. Co.*, 382 S.W.3d 434, 452 (Tex. App.—Waco 2012, pet. filed); *McFarland v. Citibank (S.D.), N.A.*, 293 S.W.3d 759, 762 (Tex. App.—Waco 2009, no pet.); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.).

[22] *See, e.g.*, *Athey v. Mort. Elec. Registration Sys., Inc.*, 314 S.W.3d 161, 165–66 (Tex. App.—Eastland 2010, pet. denied); *Goss v. Puig*, No. 11-00-00095-CV, 2000 WL 34234424, at \*2 (Tex. App.—Eastland Nov. 2, 2000, no pet.) (not designated for publication).

[23] *See Fernandez v. Peters*, No. 03-09-00687-CV, 2010 WL 4137491, at \*4 (Tex. App.—Austin Oct. 19, 2010, no pet.) (mem. op.).

[24] *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226 (Tex. App.—El Paso 2002, no pet.).

19

determined to consider the case en banc to address the question of the correct error-preservation rule to follow.

We conclude that the better course is to hold that a litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts stated therein. In reaching this conclusion, we have been guided chiefly by two considerations.

First, the Texas Supreme Court has stated that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Va. Indon. Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 911–12 (Tex. 1995) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22, 104 L. Ed. 2d 526 (1989)). In *Vaughan*, the Texas Supreme Court stated that an affidavit that fails to disclose the basis for the affiant's personal knowledge suffers from a defect of form, and that the failure to object to the defect results in waiver. Although other decisions may have cast doubt on the court's reasoning in *Vaughan*, the case has not been overruled. Moreover, the Texas Supreme Court has pointed out that raising a complaint in the trial court is only one of two steps generally needed to preserve a complaint for appellate review. *See Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex. 2012) (per curiam). The trial court also must rule or refuse to rule on the request, objection, or motion. *Id.* (citing TEX. R. APP. P. 33.1(a)). It therefore appears that to preserve a complaint that an affidavit does not show the basis of the affiant's personal knowledge, a litigant must (1) object in the trial court, and (2) obtain the trial court's ruling (or its refusal to rule) on the objection.

20

Second, this approach is consistent with the policy reasons behind error-preservation rules. The requirement that parties first raise their complaints in the trial court "conserves judicial resources by providing trial courts the opportunity to correct errors before appeal." *Id.* (citing *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003)). In addition, judicial decision-making is more accurate when trial courts have the first opportunity to consider and rule on the complaint. *Id.* Moreover, a party should not be permitted to "'surprise his opponent on appeal by stating his complaint for the first time.'" *Id.* (quoting *In re B.L.D.*, 113 S.W.3d at 350). All these policies are served by requiring a litigant to object in the trial court to an affidavit that does not disclose the basis of the affiant's personal knowledge, and two of the three policies are served by requiring that the trial court rule or refuse to rule on the issue.

Here, IGuide's special appearance was supported by an affidavit that did not reveal the basis of the affiant's personal knowledge. Although the Shuttle Parties timely objected on this basis in the trial court, they did not secure a ruling on their objection. We accordingly conclude that this complaint is waived. *See id.*

### 2. Failure to Deny that IGuide Markets Tours in Texas Through its Website

The Shuttle Parties further argue on appeal that Habte's affidavit is inadequate to meet IGuide's burden of proof because she did not deny that IGuide "markets tours in Texas through its website." The Shuttle Parties produced affidavit testimony in the trial court that IGuide's website "provides potential customers the opportunity to purchase tours through the website." In her affidavit in support of IGuide's special appearance, however, Habte attested that IGuide "does not specifically target Texas with advertising." Given the absence of any allegation that IGuide has made a single internet sale to a person in Texas or that it

21

targets the Texas market, it appears to be the Shuttle Parties' position that because potential customers *anywhere* could purchase a tour ticket through IGuide's website, jurisdiction is proper *everywhere*—including Texas. The Shuttle Parties cite no authority that supports such a view, which does not accurately reflect the law applied by this court.

When a plaintiff relies on a nonresident defendant's website as a basis for personal jurisdiction, we have evaluated the defendant's Texas contacts according to a sliding scale in much the same way as the federal district court did in *Zippo Manfacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The use of a sliding scale is appropriate because "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. " *Zippo Mfg. Co.*, 952 F. Supp. at 1124. At one end of the scale are "passive" websites in which the foreign defendant has simply posted information on a website that can be viewed in other jurisdictions. *Id.* Such websites do not support the exercise of personal jurisdiction. *Id.* (citing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996)). On the other end of the scale are cases in which the nonresident defendant has entered into contracts with residents of the forum state "that involve the knowing and repeated transmission of computer files" over the internet. *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). In the middle are cases involving interactive websites in which "the user can exchange information with the host computer." *Id.* In those cases, we examine "the level of interactivity and commercial nature of the exchange of information that occurs" on the website. *Id.*

22

Here, there is evidence only that IGuide "does not specifically target Texas with advertising" and that "potential customers [have] the opportunity to purchase tours through the website." Unlike the cases on which the Shuttle Parties rely, there are no allegations or evidence in this case that the nonresident defendant established continuing internet relationships with Texas residents through its website. *Cf. Patterson*, 89 F.3d at 1263 (exercising specific jurisdiction over software developer who contracted with a computer information service in the forum state to make his product available to subscribers, where agreement provided that it was entered into in Ohio and developer repeatedly transmitted software pursuant to the agreement over a three-year period); *Zippo Mfg. Co.*, 952 F. Supp. at 1125–26 (holding that specific jurisdiction was supported by defendant's internet sales of memberships in its online news service to 3,000 forum residents and its contracts with seven internet-access providers in the forum state involving "the downloading of the electronic messages that form the basis of this suit"); *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 507 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that the existence of a website through which nonresident defendant sold memberships to Texans and provided access to a "members-only" section was one of several factors that together supported the existence of general jurisdiction). There also is no evidence that the defendant in this case sold a product that was delivered to Texas or a service that was performed here. *Cf. Thompson v. Handa-Lopez, Inc.*, 998 F. Supp. 738, 744 (W.D. Tex. 1998) (exercising specific jurisdiction over nonresident casino in a breach-of-contract and fraud case where plaintiff entered into the contract through the casino's website, "played the casino games while in Texas, as if they were physically located in Texas, and if the Plaintiff won cash or prizes, the Defendant would send the winnings to the Plaintiff in Texas").

On this record, we conclude that "the level of interactivity and commercial nature of the exchange of information that occurs" on IGuide's website does not show that IGuide has invoked the benefits and protections of Texas laws by purposefully availing itself of the privilege of conducting activities here. To the contrary, IGuide's only "product" is a service that can be performed only in the Washington, D.C. area, and IGuide could not receive payment in Texas, because according to the uncontroverted evidence, it has no offices or bank accounts here. Finally, as previously mentioned, there is no allegation or evidence that IGuide actually has made a single sale over the internet to a person in Texas. *Cf. I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 888 (Tex. App.—El Paso 2005, pet. denied) (nonresident defendants "admitted that they sold products to Texas stores"). The bare possibility that a Texas resident could use the website to contract for services to be paid for and performed in another state is insufficient to support the exercise of personal jurisdiction.

### 3.     *Failure to Deny that IGuide Markets Tours to Texas Residents When They Are Visiting Washington, D.C.*

In a single sentence in their brief, the Shuttle Parties also complain that in her affidavit, Habte does not deny that in Washington, D.C., IGuide markets its services to tourists who are visiting from Texas. The Shuttle Parties cite no authority that personal jurisdiction can be based on such a contact in another state with a person who happens to reside in the forum state. This argument therefore is waived. *See* TEX. R. APP. P. 38.1(i).

### 4.     *Reverse-Piercing of the Corporate Veil*

The Shuttle Parties additionally assert that IGuide is subject to the trial court's specific jurisdiction through the doctrine of reverse-piercing of the corporate veil. The Shuttle Parties did not allege in their petition that this was a

basis for jurisdiction over IGuide. *Cf. Kelly*, 301 S.W.3d at 658 ("Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction *alleged by the plaintiff.*") (emphasis added). We have held, however, that the trial court may consider the plaintiffs' response to the special appearance as well as its pleadings. *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.— Houston [14th Dist.] 2011, no pet.). In their response to IGuide's special appearance, the Shuttle Parties asserted that the trial court has specific personal jurisdiction over IGuide as the alter ego of its members. We construe the Shuttle Parties' appellate argument as an assertion that the trial court erred in failing to find that IGuide is the alter ego of Cook or Eshetu, neither of whom contested personal jurisdiction.

Under Texas law, a corporation is presumed to be a separate entity from its officers and shareholders. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (refusing to disregard the distinction between a corporation and the individual who was its president and sole shareholder); *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Settled law *always* presumes that corporations exist as separate entities, and that corporate officers are separate from their corporation."). *See also Amaral v. Steele*, No. 14-02-00368-CV, 2002 WL 31427018, at *2 (Tex. App.—Houston [14th Dist.] Oct. 31, 2002, no pet.) (not designated for publication) (explaining that because parent and subsidiary corporations are presumed to be separate entities, it logically follows that the same rule would apply to an assertion of jurisdiction based on a corporation's status as the alter ego of a natural person). As a result, a plaintiff who relies on the existence of an alter-ego relationship to ascribe one defendant's contacts with

Texas to a distinct foreign corporation must prove that such a relationship exists. *See Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The Shuttle Parties do not contend that they produced evidence supporting this jurisdictional theory in the trial court. Instead, they assert that "[i]f [they] had been allowed to present the deposition testimony of [the IGuide Parties] or cross-examine them at the hearing on the Special Appearance," then they would have produced evidence in support of this theory. They similarly contend that they "would have produced their own testimony" in support of this approach. They have not, however, identified any barrier that prevented them from introducing such evidence. They also did not ask the trial court for "a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" as they were authorized to do under the rule governing special appearances. *See* TEX. R. CIV. P. 120a(3). We therefore conclude that this argument is without merit.

### 5. *Appellants' Contention that IGuide has Specific Jurisdiction as an Actor in Concert with Cook and Eshetu in Usurping a Corporate Opportunity of the Shuttle Parties*

The Shuttle Parties also contend that the trial court has specific jurisdiction over IGuide because it is acting in concert with Cook and Eshetu "to further the scheme to steal away" the Shuttle Parties' business opportunity. According to the Shuttle Parties, their causes of action against IGuide arise from its conspiracy with Cook and Eshetu to further those defendants' breaches of contract and fiduciary duty.

The Shuttle Parties have not identified any act in furtherance of an alleged conspiracy that was committed by IGuide in Texas or through which it purposefully availed itself of the privilege of conducting activities in the forum

26

state. Thus, the trial court did not err in rejecting this as a basis for jurisdiction. *See, e.g.*, *Nat'l Indus. Sand Ass'n*, 897 S.W.2d at 773 (rejecting suggestion that jurisdiction can be based on an alleged conspiracy's effects or consequences in the forum state, and restricting inquiry to whether the nonresident defendant "itself purposefully established minimum contacts"); *Knight Corp. v. Knight*, 367 S.W.3d 715, 272 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (rejecting conspiracy as a basis for specific jurisdiction where the plaintiff failed to allege that the foreign defendant committed any wrongdoing in Texas).

We overrule the Shuttle Parties' first issue.

## F. Form of the Special-Appearance Order

In the alternative to their first issue, the Shuttle Parties argue that the trial court erred by stating in the order granting the special appearance that "Plaintiffs take nothing" and that their claims are dismissed with prejudice. This is the relief requested in IGuide's special appearance, in its post-hearing response to the Shuttle Parties' bench brief, and in its proposed order granting the special appearance. At no time did the Shuttle Parties raise the argument in the trial court that the special appearance, if granted, did not entitle IGuide to such relief. This argument accordingly has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a). We therefore overrule the Shuttle Parties' second issue.

## IV. TEMPORARY INJUNCTION

In their final issue, the Shuttle Parties argue that the trial court erred in denying in part their request for a temporary injunction. A temporary injunction is an extraordinary equitable remedy intended to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g); *Walling v. Metcalfe*, 863

S.W.2d 56, 57 (Tex. 1993) (per curiam); *U.S. Denro Steels, Inc. v. Lieck*, 342 S.W.3d 677, 685 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The status quo is the last actual, peaceable, non-contested status that preceded the pending controversy. *See Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## A. Standard of Review

A trial court has broad discretion to grant or refuse a request for a temporary injunction, and we will not reverse such a ruling absent a clear abuse of discretion. *See James v. Easton*, 368 S.W.3d 799, 805 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). We will not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *See Butnaru*, 84 S.W.3d at 211. A trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *See id.* In our review of the trial court's exercise of discretion, we draw all legitimate inferences from the evidence in the light most favorable to the trial court's decision. *See EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We defer to the trial court's decision on conflicting evidence because a trial court functions as finder of fact at a hearing on a request for temporary injunction. *See Sharma*, 231 S.W.3d at 419. When, as here, no findings of fact or conclusions of law are filed, the trial court's grant or denial of injunctive relief will be upheld on any legal theory supported by the record. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). A party challenging the trial court's ruling on the requested relief must establish that, with respect to resolution of factual issues, the trial court reasonably could have reached but one decision. *See N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## B.     Irreparable Harm

Generally, to obtain a temporary injunction, the applicant must prove a valid cause of action against the defendant, a probable right to relief, and imminent, irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. Here, the trial court enjoined Cook and Eshetu from "[d]isclosing or communicating confidential data they learned relating to internet marketing while they were employed for four months by Creativerse," but denied the Shuttle Parties' request for injunctive relief "regarding sightseeing, tour and/or shuttle bus activities in competition with" DC Party Shuttle and Party Shuttle Tours. The Shuttle Parties assert that the relief granted is too narrow, and that to preserve the status quo, Cook and Eshetu must be enjoined from competing with them. Among other things, the Shuttle Parties assert that they need broader injunctive relief to avoid irreparable harm. We presume, without deciding, that the Shuttle Parties satisfied the first two elements and focus our analysis on the third element of a probable, imminent, and irreparable injury.

A party seeking a temporary injunction must show a probable, imminent, and irreparable injury in the interim between the temporary-injunction hearing and the trial on the merits. *Id.* Probable injury includes elements of imminent harm, irreparable injury, and the absence of an adequate remedy at law for damages. *Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 792 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Irreparable injuries are those for which the injured party cannot be adequately compensated by damages or for which damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Sharma*, 231 S.W.3d at 427.

The Shuttle Parties assert they have sustained irreparable harm for which there is no adequate remedy at law because "OnBoard Tours is a relatively new concern, and . . . does not have an established and demonstrable history of profits," and thus, money damages are difficult to ascertain. "OnBoard Tours," however, consists of more than just the Shuttle Parties. According to their own pleadings, the Shuttle Parties "are part of the network of companies that do business as OnBoard Tours in New York City, Washington, DC, and Las Vegas," but there are no allegations that Cook and Eshetu are wrongfully competing with any companies other than the Shuttle Parties, or in any city other than Washington, D.C. Thus, the assertion that there is no history of profits from the "network of companies" of which the Shuttle Parties are a part does not satisfy the burden to show that they cannot be adequately compensated by monetary damages.

Although the Shuttle Parties presented evidence that they have been conducting sightseeing tours in Washington, D.C. for six years, the Shuttle Parties provided no evidence of ticket sales or a change in the volume of customers or any other evidence of their economic condition, either before or after Cook and Eshetu began operating IGuide. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 177 (providing that applicant for injunctive relief failed to carry burden to demonstrate irreparable harm because he produced no evidence that his future damages were too speculative to be calculated); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235–36 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (concluding that the evidence supported the trial court's implicit finding that an employer did not suffer irreparable harm from former employee's breach of a non-competition agreement because, among other things, employer produced no evidence of economic damages since employee's departure).

The Shuttle Parties point to the testimony of Victoria Taylor, the managing director of the company conducting sightseeing tours on their behalf,[25] that the Shuttle Parties suffer more than simply loss of revenue if customers choose IGuide over DC Party Shuttle, asserting, "I think it's more than that." Despite Taylor's testimony that she observed an IGuide employee speak to guests that were meeting to board a DC Party Shuttle tour and that she saw a few guests walk away with the IGuide employee, she admitted that she did not know how or when those passengers had acquired tickets for IGuide. When asked whether she knew for a fact that IGuide's customers would have chosen to take one of the Shuttle Parties' tours if IGuide were not operating, Taylor answered that she believed that they would have. This testimony establishes only a fear of possible injury. *See Reach Grp., L.L.C. v. Angelina Grp.*, 173 S.W.3d 834, 838 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (explaining that testimony that company could be put at "great risk" by former employee's competition did not support injunctive relief because it "'established only a fear of possible injury'" (quoting *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 697 (Tex. App.—Houston [14th Dist.] 2004, no pet.))). An injunction is not proper when the claimed injury is merely speculative; fear of injury is not sufficient to support a temporary injunction. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983); *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (sub. op.).

In a temporary-injunction hearing, the burden is on the applicant to prove that the damages cannot be calculated, not for the opposing party to disprove the

---

[25] Taylor testified that she is the managing director for "OnBoard Tours DC," but that her job is functionally the same as Cook's former position. Cook was employed by DC Party Shuttle.

notion. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 177. Based on the evidence in the appellate record, the trial court reasonably could have concluded that monetary damages would adequately compensate the Shuttle Parties for any alleged loss of business or profits as a result of Cook and Eshetu's operation of a competing company. *See Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex. App.—Houston [1st Dist.] 1983, no writ) (holding that the trial court reasonably could conclude that loss of business and loss of profits caused by the wrongful appropriation and use of trade secrets was curable by monetary damages).

The Shuttle Parties also assert that Cook and Eshetu are likely unable to respond in damages to the claims asserted. They point to the record in which the trial court sustained relevancy objections to their questions to Cook about his current net worth and about whether he had a checking account in his name when he was employed by the Shuttle Parties. According to the Shuttle Parties, they were not allowed to put on this evidence to support their claim that they lacked an adequate remedy at law. To preserve for appellate review any error concerning the admissibility of evidence, an appellant must demonstrate that it either tendered the evidence or made a bill of exceptions. *See Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). The Shuttle Parties did not make an offer of proof or a bill of exceptions to demonstrate what the evidence would have shown and how it would have supported their application for injunctive relief. We conclude the Shuttle Parties have failed to preserve this argument for appellate review.

Under the applicable standard of review, we conclude that the trial court did not abuse its discretion by impliedly finding that the Shuttle Parties failed to prove that money damages would not adequately compensate them or that such damages

32

are incapable of calculation. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 178. Absent proof of irreparable harm, the Shuttle Parties were not entitled to injunctive relief. *See id.* The trial court did not abuse its discretion in denying in part the application for temporary injunction by DC Party Shuttle and Party Shuttle Tours. *See Butnaru*, 84 S.W.3d at 211 (providing that a trial court does not abuse its discretion in granting or denying a temporary injunction if some evidence reasonably supports the trial court's decision). Accordingly, we overrule the Shuttle Parties' third issue.

## V. CONCLUSION

The trial court did not err in concluding that it lacked personal jurisdiction over IGuide, and the Shuttle Parties failed to preserve their complaint about the form of the order granting IGuide's special appearance. The trial court also did not abuse its discretion by denying in part the Shuttle Parties' request for injunctive relief. We accordingly affirm both of the trial court's challenged rulings.


/s/    Tracy Christopher
Justice


The En Banc Court consists of Chief Justice Hedges and Justices Frost, Brown, Boyce, Christopher, Jamison, McCally, and Busby. Justice Donovan is not participating.

Justices Brown, Boyce, McCally, and Busby join the En Banc Opinion authored by Justice Christopher. Justice Frost issues an En Banc Dissenting Opinion in which Chief Justice Hedges and Justice Jamison join.