# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00721-CV

**Embark Holdco Management, LLC; Embark Corporate Services LLC; ACPI (Assignment for the Benefit of Creditors), LLC; ACPAHM (Assignment for the Benefit of Creditors), LLC; AGIA (Assignment for the Benefit of Creditors), LLC; ACS (Assignment for the Benefit of Creditors), LLC; AGIAC (Assignment for the Benefit of Creditors), LLC; and APF (Assignment for the Benefit of Creditors), LLC, Appellants**

**v.**

**Cantilo & Bennett, L.L.P.,
Special Deputy Receiver of Access Insurance Company, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-001285, THE HONORABLE TIM SULAK, JUDGE PRESIDING

## MEMORANDUM OPINION

This is an interlocutory appeal from an order denying special appearances filed by non-resident defendants Embark Holdco Management, LLC and Embark Corporate Services, LLC (collectively, "the Embark Respondents"); and non-resident defendants ACPI (Assignment for the Benefit of Creditors), LLC; ACPAHM (Assignment for the Benefit of Creditors), LLC; AGIA (Assignment for the Benefit of Creditors), LLC; ACS (Assignment for the Benefit of Creditors), LLC; AGIAC (Assignment for the Benefit of Creditors), LLC; and APF (Assignment for the Benefit of Creditors), LLC (collectively, "the ABC Respondents"). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7) (authorizing appeal from interlocutory order that "grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure"). In their sole issue on appeal, Appellants contend that the trial court erred in denying each of their special

appearances. We will reverse the trial court's order denying the special appearances and render judgment dismissing the claims against the appellants for lack of personal jurisdiction.

## BACKGROUND

In March 2018, the Texas Department of Insurance (the Department) sued Access Insurance Company (Access) in Travis County district court seeking an order designating the Department's Commissioner as the liquidator of Access pursuant to the Texas Insurance Code. *See* Tex. Ins. Code § 443.151 ("An order to liquidate the business of an insurer shall appoint the commissioner and any successor in office as the liquidator and shall direct the liquidator to take possession of the property of the insurer and to administer it subject to this chapter."). The district court signed an agreed order that appointed the Commissioner the liquidator and vested in him title to all Access's property (the Agreed Order). The Agreed Order authorized the Commissioner, as liquidator, to appoint a Special Deputy Receiver, who would be vested with all rights and powers of the liquidator. The Commissioner then appointed Cantilo & Bennett, L.L.P., as Special Deputy Receiver (SDR). The Agreed Order included a permanent injunction against Access and its agents, among others, enjoining them from, among other things, (1) operating, conducting, or transacting any of Access's business; (2) wasting, disposing of, converting, dissipating, or concealing any of Access's property; (3) selling, transferring or assigning any of Access's property, including accounts receivable and causes of action; and (4) directly or indirectly preventing the liquidator or his designees from gaining access to, acquiring, examining, or investigating any of Access's property or any books, records, or other material concerning Access's business.

Until it was placed into receivership, Access was a Texas-domiciled insurance company regulated by the Department that specialized in private passenger nonstandard

2

automobile liability and physical damage policies. Access's business was conducted through a series of services agreements with Access Holdco Management, LLC (Access Holdco Management), which as of 2015 was an unrelated company, and its subsidiaries.[1] By 2018, Access's business deteriorated, causing Access to be placed into receivership. Having lost their primary revenue stream due to Access's insolvency, Access Holdco Management and a number of its subsidiaries instituted what it refers to as an "assignment for the benefit of creditors" proceeding in Delaware Chancery Court. *See* 10 Del. C. §§ 7301-87 (providing for proceedings for discharge of debt upon insolvency). As part of that process, which was governed by Delaware law, Access Holdco Management and its subsidiaries assigned all of their assignable assets and property to a group of newly created entities—the ABC Respondents. The ABC Respondents were then responsible for liquidating those assets for the benefit of Access Holdco Management's creditors. *Id.* § 7328 (disposition of proceeds).

In August 2018, the ABC Respondents executed an asset purchase agreement whereby the Embark Respondents acquired certain of the assets that had previously been assigned to the ABC Respondents. In addition to purchasing certain assets, which were identified in a schedule to the asset purchase agreement, the Embark Respondents assumed one contract, a Transition Services Agreement (the ABC TSA), that ACS (Assignment for the Benefit of Creditors), LLC had entered into with Access Corporate Services, LLC, a subsidiary of Access Holdco Management, in order to facilitate ACS (Assignment for the Benefit of Creditors),

---

[1] Until 2015, Access and Access Holdco Management were under common ownership. In 2015, ownership of Access Holdco Management was transferred to a third party. As part of that transaction, Access and Access Holdco Management entered into a contract whereby Access Holdco Management and its subsidiaries operated Access's day-to-day operations pursuant to a series of services agreements.

LLC's sale and transfer of the assets that Access Holdco Management had assigned to the ABC Respondents.

On February 21, 2019, the SDR submitted a proof of claim in the Delaware Chancery Court seeking to recover any proceeds that the ABC Respondents might receive in connection with the sale of the assets assigned to them by Access Holdco Management and its subsidiaries. The SDR also objected to the Delaware Chancery Court's exercise of jurisdiction over the assignment for the benefit of creditors proceedings based on its allegation that the proceedings involved property owned by Access, title to which had been vested in the SDR. The SDR argued that the Texas Insurance Code vested jurisdiction over any proceeding affecting that property in the Texas receivership proceeding in Travis County district court. The SDR also filed a separate lawsuit (the Texas Lawsuit) in Travis County district court against the ABC Respondents, the Embark Respondents, and other entities and individuals alleging causes of action for breach of contract and breach of fiduciary duties arising out of alleged failures to perform obligations owed to Access. The SDR sought damages as well as the avoidance of transfers conducted by Access Holdco Management and its subsidiaries, including the assignment of their assets to the ABC Respondents, and of the asset purchase agreement executed between the ABC Respondents and the Embark Respondents.

In response to the Texas Lawsuit, the ABC Respondents and the Embark Respondents filed an action against the SDR in the Delaware Chancery Court seeking declarations that the Delaware Chancery Court had subject-matter jurisdiction over the assignment for the benefit of creditors proceedings, that neither those proceedings nor the asset purchase agreement between the ABC Respondents and the Embark Respondents involved

4

transfers of any property belonging to Access and, consequently, that they did not violate the Agreed Order.

In August 2019, the SDR filed an application to enforce the Agreed Order in the Texas receivership proceeding, requesting injunctive relief against the ABC Respondents and the Embark Respondents. The SDR sought to enjoin these entities from "pursuing claims against the SDR, Access, or property of the estate in any forum other that the Receivership Court." The SDR alleged that all of the entities it sought to enjoin were "parties to a scheme to defraud the receivership estate, its policyholders and creditors" and that they violated the Agreed Order by seeking declaratory relief in the Delaware Chancery Court. All of the entities the SDR sought to enjoin are Delaware limited liability companies. The SDR alleged that the district court had personal jurisdiction over these entities because (1) the Texas Insurance Receivership Act (TIRA) extends the scope of personal jurisdiction over debtors of the insurer located outside of Texas; (2) each of the entities violated the Agreed Order by filing a lawsuit against the SDR and serving the SDR at its office in Texas; (3) each of the entities hold property of Access, which property is subject to the district court's exclusive jurisdiction; (4) each of the entities had "wasted, converted, and concealed" Access's property, which property is subject to the district court's exclusive jurisdiction; (5) personal jurisdiction over the entities was conferred by statute, specifically Texas Insurance Code section 443.005(d) and the Texas long-arm statute; and (6) the exercise of jurisdiction comports with fair play and substantial justice and complies with the United States and Texas Constitutions. The SDR further alleged that the injunctive relief sought arose from or related to each of the entities' contacts with the State of Texas, that each of the entities engaged in activities constituting business in the State of Texas as provided by the Texas long-arm statute, and that each entity is a "successor in contracts" with Texas residents. Finally,

5

the SDR alleged that each of the entities was subject to personal jurisdiction in Texas because each had "taken action in violation of a final judgment entered against them"—specifically, the Agreed Order.

The ABC Respondents and the Embark Respondents filed a special appearance objecting to the district court's exercise of jurisdiction over them. *See* Tex. R. Civ. P. 120a. After a hearing, the trial court denied the special appearance as to each of the ABC Respondents and the Embark Respondents, and this appeal followed.

## DISCUSSION

Texas courts may exercise personal jurisdiction over a non-resident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

The exercise of jurisdiction over a non-resident comports with due process when (1) the non-resident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when it

6

purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). If a non-resident defendant's Texas contacts are random, fortuitous, or attenuated, the defendant is not subject to jurisdiction in Texas courts. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). In addition, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction of Texas. *Id.* The defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.w.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A non-resident defendant's contacts can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to the defendant's contacts with the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 575 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). When, as in this case, only specific jurisdiction is alleged, our minimum-contacts analysis must focus on the relationship among the defendant, the forum, and the litigation. *Id.* at 575-76. For a non-resident's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585.

Whether a court has jurisdiction is a question of law that we review de novo. *Moncrief Oil*, 414 S.W.3d at 150. The plaintiff bears "the initial burden of pleading allegations sufficient to confer jurisdiction," and the burden then shifts to the defendant "to negate all potential bases for personal jurisdiction the plaintiff pled." *Id.* at 149. A defendant can negate

7

jurisdiction either legally or factually. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Legally, the defendant can show that the plaintiff's alleged jurisdictional facts, even if true, do not meet the personal jurisdiction requirement. *Id.* Factually, the defendant can present evidence that negates one or more of the requirements, controverting the plaintiff's contrary allegations. *Id.* The plaintiff can then respond with evidence supporting the allegations. *Id.* If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination. *See Retamco Operating*, 278 S.W.3d at 337; *see also BMC Software*, 83 S.W.3d at 795. "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by the evidence." *Moncrief Oil*, 414 S.W.3d at 150. If the appellate record includes, as it does in this case, the reporter's record and the clerk's record, the trial court's implied findings are not conclusive but may be reviewed for legal and factual sufficiency of the evidence. *BMC* Software, 83 S.W.3d at 795. On appeal, the scope of the record includes all of the evidence in the record. *Washington DC Party Shuffle, LLC v. IGuide Tours, LLC,* 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). With these principles in mind, we consider the allegations and evidence presented to the trial court to determine whether the trial court erred by denying the special appearances filed by the ABC Respondents and the Embark Respondents.

### The ABC Respondents

The SDR alleged that the district court had personal jurisdiction over all the non-resident ABC Respondents pursuant to various provisions contained in chapter 443 of the Texas Insurance Code. *See* Tex. Ins. Code §§ 443.001-.402 (Texas Insurance Receivership Act (TIRA)). First, the SDR alleged that TIRA section 443.001(e)(5)(B) "extends the scope of personal

8

jurisdiction over debtors of the insured located outside of Texas." Section 443.001(e)(5)(B) provides that "the purpose of this chapter is to protect the interests of insureds, claimants, creditors, and the public generally, through [] lessening the problems of interstate receivership by [] extending the scope of personal jurisdiction over debtors of the insured located outside this state." *Id.* § 443.001(e)(5)(B). In its pleading, the SDR does not identify any debts that the ABC Respondents owe Access nor does it allege how the ABC Respondents could be considered "debtors" of Access. At the hearing on the special appearances, the SDR presented two witnesses: Susan Salch, a partner in the SDR (the Cantilo & Bennett law firm), who was the individual with the primary responsibility for the liquidation of Access, and Brian Falligant, a subcontractor of the SDR, who was tasked with identifying and locating Access's electronic and paper records, securing them, and ultimately transferring them to the SDR. Neither Salch nor Falligant presented any testimony or exhibits tending to show that any of the ABC Respondents were debtors of Access. Consequently, TIRA section 443.001(e)(5)(B) is not implicated in the jurisdictional analysis.

The SDR also asserted that the ABC Respondents committed a tort in Texas by violating the Agreed Order when they sought declaratory relief in the Delaware Chancery Court. As an initial matter, the ABC Respondents were not parties to the receivership proceeding in which the Agreed Order was entered. The ABC Respondents were not named in the Agreed Order, nor was it directed at them. Nevertheless, the SDR asserts that the ABC Respondents are still subject to the Agreed Order because they acted "in concert" with persons to whom the Agreed Order did apply. There is no evidence, testimonial or otherwise, to support the notion that the ABC Respondents acted "in concert" with any entity or person named in or otherwise subject to the Agreed Order when they filed their request for declaratory relief in the Delaware

9

Chancery Court. Thus, there is nothing to support the SDR's allegation that the ABC Respondents were subject to or violated the Agreed Order. Moreover, even assuming the Agreed Order purported to impose obligations or restraints on the ABC Respondents, it could not effectively do so in the absence of personal jurisdiction over the ABC Respondents. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (judgment rendered by trial court that lacks jurisdiction over party is void); *Gauci v. Gauci*, 471 S.W.3d 899, 901 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (same); *Whatley v. Walker*, 302 S.W.3d 314, 321 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Before a Court may enter judgment against a party, the court must have obtained jurisdiction over that party pursuant to applicable rules or statutes."). Thus, we disagree with the SDR's assertion that conduct inconsistent with the terms of the Agreed Order could alone serve as a basis for the exercise of personal jurisdiction.

The SDR asserted that the ABC Respondents were subject to personal jurisdiction in Texas because "they held property of the Estate, which is subject to [the Travis County district court's] exclusive jurisdiction wherever it is located," presumably pursuant to TIRA. Similarly, the SDR asserted that the ABC Respondents have "wasted, converted, and concealed property of the estate." There was no evidence, testimonial or otherwise, identifying what that property was or how the ABC Respondents allegedly "wasted," "converted," or "concealed" it. The ABC Respondents and the Embark Respondents submitted affidavits stating that neither possessed any property belonging to Access. To the extent the SDR is referring to the series of transactions whereby the ABC Respondents were assigned property of Access Holdco Management and its subsidiaries and then conveyed certain of the assigned assets to the Embark Respondents, the SDR did not identify what property it was referring to or present evidence tending to show

10

that the referenced property and assets belonged to Access or that Access had any ownership interest in them.

The SDR also alleged that the ABC Respondents fall under the court's "statutory personal jurisdiction" set out in TIRA section 443.005(d)(5). That section provides that the court has jurisdiction over a properly served person if that person "is obligated to the insurer in any way, in any action on or incident to the obligation." Tex. Ins. Code § 443.005(d)(5). The pleadings do not include allegations, the record does not contain evidence, and the SDR's brief includes no argument, explaining either the nature of any obligation the ABC Respondents had to Access or how the action to enjoin the ABC Respondents from pursuing declaratory relief in the Delaware Chancery Court was "on or incident to" any such obligation. Thus, this allegation is not one sufficient to confer jurisdiction. *See Moncrief Oil*, 414 S.W.3d at 149 (plaintiff bears "the initial burden of pleading allegations sufficient to confer jurisdiction").

Finally, the SDR alleged that the ABC Respondents engaged in activities constituting business in the State of Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042. Specifically, the SDR alleged that the ABC Respondents were "successors" to Access Holdco Management and its subsidiaries and, consequently, were "successors in contracts" with Texas residents. As an initial matter, the ABC Respondents acquired the assets previously held by Access Holdco Management and its subsidiaries by an assignment, not by a stock transfer. Thus, the ABC Respondents are not "successors" to any of the liabilities or obligations of Access Holdco Management or its subsidiaries. *See McKee v. American Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) ("Texas law does not generally recognize successor liability for subsequent purchases of corporate assets."). Thus, the ABC Respondents' acquisition of assets owned by Access Holdco Management and its subsidiaries does not establish that they

11

should have reasonably foreseen being haled into Texas courts in connection with any business conducted between Access Holdco Management and its subsidiaries and Access. There is no evidence that the ABC Respondents assumed, and therefore had any responsibility for any liabilities of Access Holdco Management or its subsidiaries. *Cf. Kelly Inv., Inc. v. Basic Capital Mgmt.*, 85 S.W.3d 371, 375-76 (Tex. App.—Dallas 2002, no pet.) (purchase of contracts with Texas residents with knowledge that contracts were subject of pending litigation in Texas constituted sufficient minimum contacts with Texas to confer personal jurisdiction). In *Kelly*, the court held that the non-resident defendant was subject to personal jurisdiction in Texas because it purchased contracts with Texas residents knowing that, at the time of the purchase, those contracts were the subject of pending litigation in Texas and expressly assumed the "litigation risk" of the Texas cases. Here, however, the ABC Respondents did not assume any existing obligations or liabilities related to any of the assets it acquired by assignment. Moreover, the SDR presented no evidence of what specific contracts it was relying on to confer personal jurisdiction over the ABC Respondents other than to allege that they were with "Texas residents." There is nothing in the record from which this Court may conclude that the claims made by the SDR in the underlying proceeding arose out of or were related to the unidentified contracts.

In its brief on appeal, the SDR advances additional arguments in support of its contention that the trial court properly denied the ABC Respondents' special appearance. The SDR maintains that the ABC Respondents are alleged to have engaged in "two tortious schemes" that subject them to jurisdiction in Texas: (1) the "improper" transfer of assets and (2) violations of the Agreed Order. The asset transfer was done pursuant to Delaware law and under the supervision of the Delaware Chancery Court. Even if the asset transfer could be considered a

12

tort,[2] it was not "committed in whole or in part" in Texas.  *See* Tex. Civ. Prac. & Rem. Code § 17.042(2).  The SDR did not make any allegations or present any evidence that showed a factual nexus between the alleged wrongdoing and Texas such that the alleged wrongdoing could be said to have been committed in whole or in part in Texas.  *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67-68 (Tex. 2016) ("Thus, 'the mere fact that a defendant's conduct affected plaintiffs with connections to the forum state does not suffice to authorize jurisdiction.'" (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).  With regard to the alleged violation of the Agreed Order, we have already concluded that the allegation that the ABC Respondents violated the Agreed Order is not sufficient to confer jurisdiction.  Moreover, even were we to assume there was a violation of the Agreed Order, the SDR failed to establish that alleged violations of the Agreed Order occurred in whole or in part in Texas.

The SDR also argues that the ABC Respondents are in possession of property belonging to Access; specifically, electronic data and unidentified books and records related to Access Holdco Management's work for Access.  The evidence in the record, however, does not support the assertion that any particular records or data are the property of Access.  Nor does the SDR explain how its claims against the ABC Respondents arise out of or are related to the possession of such property.

We conclude that the record does not demonstrate that the ABC Respondents had contacts with Texas sufficient to support the exercise of personal jurisdiction.  Having determined that the ABC Respondents did not have sufficient minimum contacts with Texas to

---

[2]    The SDR has not presented any evidence that the proceeding was improper or constituted tortious conduct.  In fact, the SDR has filed a proof of claim in the Delaware Chancery Court by which it may recover from the estates of Access Holdco Management and its subsidiaries any money or property to which it can show itself entitled.  The SDR has not identified any evidence of harm Access or the receivership estate suffered as a result of the assignment of Access Holdco Management and its subsidiaries' assets to the ABC Respondents.

13

support personal jurisdiction, we need not address whether the exercise of that jurisdiction would comport with notions of fair play and substantial justice. *See Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at \*14 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.).

### *The Embark Respondents*

For the most part, the allegations and the evidence the SDR relied on to support personal jurisdiction over the Embark Respondents are the same it relied on for the ABC Respondents. Indeed, the SDR disclaimed any need to make allegations against any of the eight defendants in a "repetitive individualized manner" and maintained that its allegation that all eight defendants "participated is sufficient." For the same reasons set forth above relating to the ABC Respondents, we also conclude that the collective allegations and evidence the SDR relied on to support personal jurisdiction over the Embark Respondents were insufficient to demonstrate that the Embark Respondents had minimum contacts with Texas that would support specific jurisdiction.

The SDR did make an additional argument in support of its position that the Embark Respondents were subject to personal jurisdiction. The SDR asserted that the Embark Respondents were party to an agreement with the SDR that included a provision that the Texas court in which the receivership action was pending would have exclusive jurisdiction over any litigation arising out of the agreement. The SDR argues that this agreement constitutes consent by the Embark Respondents to personal jurisdiction in Texas.

The agreement the SDR refers to is a transition services agreement (the SDR TSA) that the SDR entered into with Access Holdco Management and its subsidiaries in April 2018, shortly after the Texas receivership proceedings were instituted. The stated purpose of the SDR TSA was for Access Holdco Management and its subsidiaries to "provide services to the

14

SDR in order to facilitate the orderly liquidation of [Access]." The SDR argues that the Embark Respondents have assumed the SDR TSA from Access Holdco Management and, consequently, have consented to personal jurisdiction in Texas for litigation arising out of that agreement. First, the SDR argues that the SDR TSA was one of the "assets" Access Holdco Management assigned to the ABC Respondents that were then sold to the Embark Respondents. At the hearing on the special appearances, Salch testified that she understood that the SDR TSA was assigned to Embark Holdco as part of the August 2018 asset purchase agreement pursuant to which Embark Holdco Management, LLC and Embark Corporate Services, LLC acquired certain of the assets that had been assigned to the ABC Respondents. Salch stated that she was not familiar with the specific assets that were sold or assigned in the August 2018 asset purchase agreement and that her understanding was based on her review of the transaction documents. Salch did not identify anything specific in those documents to support her understanding that either of the Embark Respondents had been assigned or assumed the SDR TSA.

For their part, the Embark Respondents submitted the sworn declaration of Thomas A. Minick, president of each of the ABC Respondents. Minick averred that none of the ABC Respondents had entered into any contract with the SDR or assumed or taken assignment of any contracts between the SDR and Access Holdco Management. Minick further averred that the only contract that the ABC Respondents had assumed from Access Holdco Management and subsequently assigned to the Embark Respondents was a different transition services agreement, the ABC TSA that ACS (Assignment for the Benefit of Creditors), LLC had entered into with Access Corporate Services, LLC in order to facilitate ACS (Assignment for the Benefit of Creditors), LLC's sale and transfer of the assets that Access Holdco Management had assigned to the ABC Respondents. The Embark Respondents submitted the sworn declaration of

15

Raimundo Ruiz, the president of Embark Holdco. Ruiz averred that neither of the Embark Respondents had entered into any contracts with the SDR and that neither assumed any contract from Access Holdco Management other than the ABC TSA. The ABC Respondents and the Embark Respondents also attached as an exhibit to the sworn declaration of Matthew L. McGinnis a copy of the asset purchase agreement between the ABC Respondents and the Embark Respondents, which specifies on Schedule 1.1(c) that the only contract assumed by the Embark Respondents as part of the transaction was the ABC TSA, which is not the same agreement as the SDR TSA.

In its brief to this Court, the SDR points to two August 2018 emails from Jack Genovese, a representative of the Embark Respondents, to counsel for the SDR. In the first email, Genovese states that in light of the transaction between the ABC Respondents and the Embark Respondents, he would propose either assigning Access Holdco Management's obligations under the SDR TSA to the Embark Respondents or "enter[ing] into a new Transition Services Agreement with Embark Holdco Management as the services provider." In the second follow-up email, Genovese attached a proposed Transition Services Agreement "to continue the services formerly provided by Access Holdco Management, LLC." Rather than support the SDR's position that the Embark Respondents assumed or were assigned the SDR TSA as part of the asset purchase agreement between the ABC Respondents and the Embark Respondents, these emails show an effort by the Embark Respondents to accomplish such an assignment or to enter into a new transition services agreement with the SDR. Salch testified that the SDR did not execute the proposed transition services agreement.[3]

---

[3] We also note that even assuming that the Embark Respondents had assumed the SDR TSA, the SDR does not explain how the injunctive relief it seeks arises out of or relates to a transition services agreement.

16

Having reviewed the jurisdiction allegations contained in the SDR's pleading, and the evidence presented by the SDR, the Embark Respondents, and the ABC Respondents, we conclude that the record does not support the conclusion that the Embark Respondents had contacts with Texas sufficient to support the exercise of personal jurisdiction. Having determined that the Embark Respondents did not have sufficient minimum contacts with Texas to support personal jurisdiction, we need not address whether the exercise of that jurisdiction would comport with notions of fair play and substantial justice. *See Brady*, 2020 WL 2029245, at \*14.

## CONCLUSION

Because the ABC Respondents' and the Embark Respondents' contacts with Texas are insufficient to establish specific jurisdiction, the trial court erred in denying their special appearance. Consequently, we reverse the trial court's order denying the ABC Respondents' and the Embark Respondents' special appearance and render judgment dismissing all claims against them for want of jurisdiction.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Reversed and Rendered

Filed: March 17, 2021

17