**Reversed and Rendered and Memorandum Opinion filed April 20, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00907-CV

### KEY MANAGEMENT GROUP, LLC, Appellant

### V.

### MERIDIAN HOSPITAL SYSTEMS CORPORATION, Appellee

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2019-23790**

## MEMORANDUM OPINION

Key Management Group, LLC (KMG), a nonresident of Texas, appeals the interlocutory denial of its special appearance. We hold that KMG lacks minimum contacts with Texas to justify the exercise of personal jurisdiction when a KMG employee in India logged into the plaintiff's web-based software four times for thirty-seven minutes. We reverse the trial court's order and render the order the trial court should have rendered, sustaining the special appearance and dismissing the plaintiff's claims against KMG.

# I.   BACKGROUND

Meridian Hospital Systems Corporation is a Texas company with its principal place of business in Dallas.  Meridian licensed the use of its web-based software to defendants Post Acute Medical, LLC, PAM Physician Enterprise, and Clear Lake Institute for Rehabilitation, LLC (collectively, "PAM").  PAM has a principal place of business in Texas and headquarters in Pennsylvania.  Through various agreements with PAM, Meridian retained ownership rights to the software and prohibited reverse engineering of the software and providing login credentials to third parties.

In 2019, PAM and KMG entered into a contract for the development of software that would ultimately replace the Meridian software for PAM.  KMG is a New York corporation with headquarters in New York, an office in New Jersey, and affiliate employees in India.  KMG has never maintained an office in Texas, had employees in Texas, or held property or bank accounts in Texas.  PAM and KMG employees met at PAM's headquarters in Pennsylvania before entering into the contract.  All discussions and work between PAM and KMG took place in Pennsylvania, New York, or India.

A PAM employee gave his login credentials to a KMG affiliate employee who worked in India.  The PAM employee told a Meridian employee that his purpose in providing the login credentials was for KMG to "document" the software so PAM could build its own software.  At the time, PAM was trying to create comparable software.

The KMG employee, while in India, used the login credentials to access Meridian's software on four occasions for about thirty-seven minutes.  The KMG employee "viewed 733 page views of Meridian's software."

Meridian sued PAM and KMG. Against KMG, Meridian asserted claims for misappropriation of trade secrets and conspiracy to do so, unfair competition by misappropriation, and tortious interference with contract. KMG filed a special appearance, and Meridian filed a response; both parties submitted evidence. In its response, Meridian alleged that KMG "accessed Meridian's applications in Texas" and "accessed a Texas resident's property in the state of Texas—specifically, its software applications which are owned by a Texas entity." Meridian alleged that it had entered into an "agreement for servers with the location in Austin, Texas." A Meridian employee testified that its data was hosted on Hostway servers located in Austin, Texas, but Meridian "also contracted with Microsoft Azure."

KMG adduced evidence that its representative did not know that Meridian's servers were located in Texas and did not learn that Meridian was based in Texas until after the lawsuit was filed. KMG also adduced testimony from a Meridian employee that Meridian had both Hostway and Microsoft Azure hosting servers, and Azure servers are located "all over"—she did not know the physical location of the Azure servers.

The trial court denied the special appearance, and KMG appeals.

## II. PERSONAL JURISDICTION

KMG contends that the trial court erred by denying the special appearance because the court does not have personal jurisdiction over KMG. Specifically, KMG contends that (1) Meridian failed to plead jurisdictional facts bringing KMG within reach of the long-arm statute; (2) Meridian failed to adduce any evidence that KMG accessed a Texas server; (3) assuming that KMG accessed the server in Texas, KMG's contacts with Texas are insufficient to establish personal jurisdiction; and (4) exercising personal jurisdiction over KMG offends traditional

notions of fair play and substantial justice.  We agree with KMG's third point and reverse the trial court's order on that basis.

## A.    Legal Principles

We review determinations of personal jurisdiction de novo.  *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017).  When, as here, the trial court does not issue findings of fact, all facts necessary to support the judgment and supported by the evidence are implied.  *BMC Software Belgium, N.V. v. Marshland*, 83 S.W.3d 789, 795 (Tex. 2002).

Texas courts may exercise personal jurisdiction over a nonresident if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction satisfies due process.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013).  Although an allegation that a tort was committed in Texas satisfies the Texas long-arm statute, the allegation does not necessarily satisfy due process.  *Id.*

Texas's exercise of personal jurisdiction over a nonresident defendant comports with due process if a nonresident defendant has "minimum contacts" with Texas and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *M & F Worldwide*, 512 S.W.3d at 885.  A defendant's minimum contacts with a forum are established when the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *Id.*  Three principles govern this analysis:

> (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by

availing itself of the jurisdiction such that it impliedly consents to suit there.

*Id.* (quotations omitted).

The absence of physical contacts with Texas does not defeat personal jurisdiction so long as the defendant's efforts are purposefully directed towards residents of Texas. *See Retamco Operating, Inc. v. Rep. Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). For example, a defendant who reaches out beyond one state and creates continuing relationships and obligations with a citizen of Texas is subject to the jurisdiction in Texas for claims based on those activities. *See id.*

But, a nonresident's "directing a tort at Texas from afar is insufficient to confer specific jurisdiction." *Moncrief Oil*, 414 S.W.3d at 157. Personal jurisdiction may not be upheld based on the mere foreseeability of causing injury in Texas. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 789 (Tex. 2005). The proper focus is on the extent of the defendant's activities in the forum, not the residence of the plaintiff. *Moncrief Oil*, 414 S.W.3d at 157.

A nonresident defendant's minimum contacts will give rise to specific personal jurisdiction if the plaintiff's cause of action arises from or relates to those contacts. *M & F Worldwide*, 512 S.W.3d at 886. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moncrief Oil*, 414 S.W.3d at 156 (quotation omitted).

The parties bear shifting burdens in a challenge to personal jurisdiction. *Kelly v. Gen. Interior Const. Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute; for example, that the

defendant committed a tort in Texas. *See id.* at 658–59. If the plaintiff fails to do so, the defendant can negate jurisdiction by proving it does not reside in Texas. *See id.* If the plaintiff meets the initial burden, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* at 658. The defendant may do so by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish jurisdiction. *Id.* at 659. Or, the defendant may present evidence to disprove the plaintiff's allegations, and the plaintiff can respond with its own evidence or risk dismissal if it cannot present evidence establishing jurisdiction. *See id.* Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleadings. *Id.* at 658.

**B.      Meridian Pleaded Jurisdictional Facts, and KMG Did Not Negate the Location of Meridian's Property**

KMG contends that Meridian failed to plead any jurisdictional facts and failed to adduce evidence that KMG's employee accessed the software "in Texas." In determining the sufficiency of Meridian's pleadings, we consider its allegations in the response to the special appearance. *See Wash. D.C. Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). Meridian alleged in the response that KMG accessed Meridian's property "in Texas" and attached evidence that its data was stored on servers in Texas. A fair reading of the allegations is that Meridian's software was located in Texas. Thus, the burden shifted to KMG to negate Meridian's allegations on a legal or factual basis. *See Kelly*, 301 S.W.3d at 658–59.

Although KMG adduced evidence that some of Meridian's data may be stored on Azure servers outside Texas, this evidence does not negate Meridian's allegation that its software was located in Texas when KMG accessed it. It would

6

be mere speculation to infer that, because Meridian had some data stored outside Texas, KMG accessed the servers outside of Texas only. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 265 (Tex. 2014) (discussing equal inferences). Because KMG did not negate Meridian's allegations with evidence, Meridian had no burden to adduce evidence that its property was located in Texas. *See Kelly*, 301 S.W.3d at 658–59.

## C. Legally Insufficient Evidence of Minimum Contacts to Support Personal Jurisdiction

Meridian's claims are based on allegations that KMG accepted login credentials from a PAM employee and then used those credentials to view Meridian's trade secrets that were located in Texas. It is undisputed that the KMG affiliate employee was located in India when he logged into Meridian's web-based software for thirty-seven minutes and "viewed 733 page views." We agree with KMG that its minimal access of Meridian's Texas property by an employee located in India is insufficient to establish personal jurisdiction over KMG in Texas for Meridian's claims for misappropriation of trade secrets, unfair competition by misappropriation, and tortious interference.

Meridian principally relies on *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007 (S.D. Tex. 2018), in which the U.S. District Court upheld personal jurisdiction over federal trade secrets and fraud claims when the defendant secured login credentials for the plaintiff's servers by making false statements in a telephone call and emails to the plaintiff. *See id.* at 1020. The defendant in *Fintech*, however, knew that the plaintiff was located in Texas and that the plaintiff's servers were located in the United States, so the defendant purposefully directed its actions toward Texas and intentionally aimed its actions at the United States. *See id.* at 1021–22.

Here, KMG adduced uncontroverted evidence that it did not know Meridian's location or the location of its property. And Meridian does not allege that KMG directed fraudulent communications to Meridian in Texas, but rather that PAM violated its contract by supplying the login credentials to KMG.

This court's prior decision in *Information Services Group, Inc. v. Rawlinson*, 302 S.W.3d 392 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), is instructive. In *Rawlinson*, this court affirmed the grant of a special appearance when an employer alleged that its former employee violated confidentiality agreements by taking confidential and proprietary information with him to his new employer. *See id.* at 397. The employer alleged that the employee accessed confidential and proprietary information from company servers that were located in Texas. *Id.* at 401. This court reasoned that the employee could not have purposefully availed himself of the benefits of conducting business in Texas by accessing the servers from the United Kingdom because the employer unilaterally chose the Texas location for the servers and because the employee did not know where the servers were located. *Id.* at 402. The employee's contact with Texas by accessing the servers, which the employer chose to locate in Texas, was merely fortuitous. *See id.*[1]

Like in *Rawlinson*, the location of Meridian's software on servers in Texas was merely fortuitous. KMG could not have purposefully availed itself of the

---

[1] This court distinguished a decision from the Fort Worth Court of Appeals by noting that there was no allegation that the employee "purposefully directed any improper activity towards their servers." *Rawlinson*, 302 S.W.3d at 402 (citing *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841 (Tex. App.—Fort Worth 2006, no pet.)). In *TravelJungle*, the defendant sent "electronic robots and spiders" to the defendant's servers and scraped data—2,972 search requests in a single day. *See* 212 S.W.3d at 847–48. The plaintiff alleged a claim for trespass of the servers, *id.* at 844, and averred that the defendant's screen-scraping used "valuable computer capacity" and deprived the plaintiff of its ability to possess and use that capacity to serve other customers. *Id.* at 847–48. Here, Meridian does not allege that KMG caused a similar physical disruption of Meridian's property located in Texas.

benefits of conducting business in Texas by accessing the servers from India because Meridian unilaterally chose the location for its servers and because KMG did not know where the servers were located. *See id.* Although it may have been foreseeable that KMG was appropriating trade secrets when it remotely accessed Meridian's data, or that KMG interfered with Meridian's contract with PAM based on communications occurring in Pennsylvania, New York, and India, merely directing a tort at a Texas resident is insufficient to establish personal jurisdiction. *See Moncrief Oil*, 414 S.W.3d at 154, 156–57 (upholding jurisdiction over a claim for misappropriation of trade secrets when the defendant attended meetings in Texas and accepted trade secrets at those meetings regarding a potential joint venture in Texas with a Texas corporation; but rejecting jurisdiction over a claim for tortious interference with contract based on discussions between the defendant and third-party that occurred outside of Texas).

The allegations and evidence in this case fail to establish that the exercise of personal jurisdiction comports with due process. Accordingly, the trial court erred by denying KMG's special appearance.

## III.  CONCLUSION

KMG's sole issue on appeal is sustained. We reverse the trial court's order denying the special appearance and render the order the trial court should have rendered, sustaining the special appearance and dismissing Meridian's claims against KMG for lack of personal jurisdiction.


/s/    Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

9