**Reversed and Rendered and Memorandum Opinion filed May 27, 2021**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00814-CV

---

## LG CHEM, LTD., Appellant

## V.

## GLENN GRANGER, JOSE FLORES AND JAMES TRAVIS, Appellees

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2018-60352**

---

## MEMORANDUM OPINION

In this interlocutory appeal, LG Chem, Ltd. appeals the trial court's denial of its special appearance. In two issues, appellant contends that the trial court erred in finding that personal jurisdiction exists over appellant in Texas. Because appellees did not demonstrate general or specific jurisdiction in the trial court, we reverse the order of the trial court and render an order of dismissal without prejudice against appellant.

# I.   BACKGROUND

In their second amended petition, appellees alleged they suffered second and third degree burns when batteries manufactured and designed by appellant "unexpectedly exploded." Each appellee purchased the battery, an "HG2 18650" lithium-ion battery, in Texas from a "vapor" or "e cig" shop. Each appellee was injured by the battery in Texas. Each appellee is a resident of Texas. Appellees sued appellant, the retailers that sold appellees the batteries, and LG Chem America, Inc. Appellees alleged that jurisdiction exists over appellant because appellant has done business in Texas, committed a tort in Texas, and has had continuous contacts with Texas.

Appellant filed a special appearance contesting personal jurisdiction in Texas and attached the affidavit of a senior manager. The manager stated that appellant has no systematic connections to Texas, is not incorporated or headquartered in Texas, and has never had any physical presence in Texas. Appellant has never had a Texas office, telephone number, post office box, mailing address or bank account; has never been registered to do business in Texas; has never owned or leased real property in Texas; and has never had a registered agent for service of process in Texas. The manager stated that appellant:

(1) "does not design or manufacture lithium-ion power cells for sale to individual consumers as standalone batteries;"

(2) "does not distribute, advertise, or sell power cells directly to consumers, and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to distribute, advertise, or sell [appellant's] lithium-ion power cells directly to consumers as standalone batteries;" and

(3) "does not design, manufacture, distribute, advertise, or sell lithium-ion power cells for use by individual consumers . . . as replaceable or rechargeable power cells in electronic cigarette or vaping devices."

The manager further stated that appellant "manufactures lithium-ion power cells for use in specific applications by sophisticated companies."

On the day prior to the hearing on appellant's special appearance, appellees filed their response arguing that the trial court should deny appellant's request because appellant "markets and sells lithium-ion batteries directly to Texas businesses and consumers" and "profits from the sale of lithium-ion batteries to Texas businesses and consumers." Appellees alleged that appellant "directly sells to Texas manufacturers including . . . Stanley Black and Decker." Appellees contended that two of Stanley Black and Decker's manufacturing plants in Texas are "devoted" to manufacturing "power and mechanics tools which are widely known to use 18650 lithium-ion batteries, the same model battery that exploded in [appellees'] pockets."[1] Appellees also relied on a prior patent dispute case involving appellant and another party in which appellant contended that it sold "$0.76 million every day attributable to the accused batteries sold or imported into the United States." Appellees contended that in the patent dispute case, appellant "admitted its batteries are broadly sold in common consumer electronics nationwide through household brands such as Apple, HP, Dell and nationwide retailers like Best-Buy and Wal-Mart." Appellees did not attach an affidavit with their response but attached eleven exhibits consisting of printouts from appellants' website, printouts from Stanley Black and Decker's website, an order from another case involving appellant, and Texas Secretary of State documents.[2]

---

[1] Appellant attached printouts of Stanley Black and Decker's website as evidence to prove these allegations. However, appellant objected to the evidence, and the trial court excluded the printouts from its consideration of the special appearance.

[2] The trial court sustained appellant's objections to five exhibits attached to appellees' response to the special appearance. The trial court stated that it "did not deny [appellant's] Special Appearance on the basis of any of [appellees'] exhibits" and that the ruling "is the same if it had not considered any of [appellees'] exhibits . . . ." Thus, we consider appellees'

The trial court conducted a hearing on appellant's special appearance and denied it, concluding that it had jurisdiction over appellant. The trial court did not issue findings of fact or conclusions of law. This appeal followed.

## II.   STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, the trial court does not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by the evidence are implied. *Id*. When jurisdictional facts are undisputed, whether those facts establish jurisdiction is a question of law. *Id*.

When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear shifting burdens of proof. *Bell*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Id*. The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden. *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). The scope of review includes all evidence in the record. *Id*. at 729.

---

allegations contained in their live petition and response to appellant's special appearance, including those allegations regarding appellant's relationship with Stanley Black and Decker, but only those exhibits admitted as "evidence affirming jurisdictional allegations." *See* Tex. R. Civ. P 120a; *see also Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its burden.").

If the plaintiff meets his initial pleading burden, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559. The defendant can negate jurisdiction on either a factual or legal basis. Factually, the nonresident defendant can present evidence that it has no contacts with Texas to disprove the plaintiff's allegations. *Kelly v. Gen. Interior Constr. Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Legally, the nonresident defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the contacts do not constitute purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts with Texas; or that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Id*.

### III. GENERAL LEGAL PRINCIPLES

"Texas courts may exercise personal jurisdiction over a nonresident if '(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.'" *Bell*, 549 S.W.3d at 558 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). The long-arm statute is satisfied when a defendant commits a tort in whole or in part in this state. *Id.* at 558–59 (citing Tex. Civ. Prac. & Rem. Code § 17.042(2)). However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution. *Id.* at 559.

To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A

nonresident establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[T]he defendant's in-state activities 'must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.'" *Bell*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

When determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek come benefit, advantage or profit by availing itself of the jurisdiction.

*Id*. (quoting *Moncrief Oil*, 414 S.W.3d at 151). We assess the quality and nature of the contacts, not the quantity. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016).

A defendant's contacts may give rise to general or specific jurisdiction. *Bell*, 549 S.W.3d at 559. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional

case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id*. (quoting *Daimler AG*, 571 U.S. at 139 n.19). However, the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business is "unacceptably grasping." *Daimler AG*, 571 U.S. at 138. The flow of a product into a forum may "bolster an affiliation germane to *specific* jurisdiction." *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 927. "But ties serving to bolster specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.*

For a Texas court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant's contacts with Texas must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Bell*, 549 S.W.3d at 559. A defendant's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). Purposeful conduct generally requires "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum State.'" *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)). Examples of additional conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112; *see also Spir Star*, 310 S.W.3d at 873.

7

The nonresident defendant's purposeful contacts "must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Bell*, 549 S.W.3d at 559–60. Operative facts are the facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585.

## IV. ANALYSIS

Appellant raises two issues on appeal. First is that general jurisdiction is not appropriate because appellant is not "at home" in Texas. Second is that specific jurisdiction is not appropriate because appellant negated the existence of any contacts that would bear a substantial connection with appellees' claims and appellees failed to present any evidence of purposeful contacts between appellant and Texas.

### A. General Jurisdiction

In *Daimler*, the Supreme Court concluded that Daimler was not "at home" in California for purposes of general jurisdiction. *Daimler*, 571 U.S. at 139. For purposes of its analysis, the court assumed that the contacts of Daimler's indirect subsidiary, MBUSA, could be imputed to Daimler. *Id*. at 136. MBUSA was Daimler's exclusive importer and distributor in the United States. *Id*. at 123. MBUSA had "multiple California-based facilities," and was "the largest supplier of luxury vehicles to the California market"; over 10% of all new vehicle sales in the United States occurred in California. *Id*. MBUSA's sales in California accounted for 2.4% of Daimler's worldwide sales. *Id*. However, neither Daimler nor MBUSA were incorporated or had its principal place of business in California. *Id*. at 139.

8

In this case, it is undisputed that appellant is a Korean corporation, with its headquarters and principal place of business in Seoul, South Korea. Appellees' undisputed allegations and evidence showed that appellant sells batteries worldwide and across the United States, with more than eleven percent of appellant's yearly revenue coming from sales and imports in the United States. There were no allegations or evidence of how much of appellant's business the Texas sales to Stanley Black and Decker and Hewlett Packard consisted of in comparison to their worldwide or U.S. sales. While appellees alleged that there is one LG warehouse in Texas, it is undisputed that appellant is not incorporated or headquartered in Texas; has never had a Texas telephone number, post office box, mailing address, or bank account; and has never been registered to do business in Texas or had a registered agent for service of process in Texas. Appellees have not shown that this is an "exceptional case" where appellant's operations in Texas are so substantial and of such a nature as to render the corporation at home in Texas. *See BNSF Ry. Co.*, 137 S. Ct. at 1558. Appellant may be the "worldwide" leader in lithium-ion battery sales, but like in *Daimler* there is no indication, even assuming considerable sales in Texas, that appellant is "at home" in Texas. *See Daimler*, 571 U.S. at 139 n. 20 ("[G]eneral jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." (alteration in original, citations omitted)).

Accordingly, appellees failed to demonstrate general jurisdiction over appellant in Texas.

## B.      Specific Jurisdiction

Assuming without deciding that appellees established "purposeful contacts" between appellant and Texas, the evidence is legally insufficient to establish jurisdiction because there is no indication that appellees' claims arose from or are related to appellant's contacts with Texas.  That the cause of action arises from or is related to the defendant's forum contacts, "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579.  To satisfy this requirement, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Spir Star*, 310 S.W.3d at 874. "That similar products were sold in Texas would not create a substantial connection as to products that were not." *Id*.  Here, such a substantial connection is lacking. *See Bristol-Myers Squibb Co v. Super. Ct. of Cal.*, 137 S.Ct. 1773, 1781 (2018) ("Nor is it sufficient—or even relevant—that BMS conducted research in California on matters unrelated to Plavix.  What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) ("Ford had advertised, sold, and serviced those two car models in both States for many years. (Contrast a case, which we do not address, in which Ford marketed the models in only a different State or region) . . . .  Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States.").

Appellees argue that the "nexus is clear" that appellant's contacts "with Texas are its sale of and profit from lithium-ion batteries, including 18650 batteries in Texas."  However, with regard to the 18650 battery, appellees only alleged that two of Stanley Black and Decker's manufacturing plants in Texas are "devoted" to

manufacturing "power and mechanics tools which are widely known to use 18650 lithium-ion batteries, the same model battery that exploded in [appellees'] pockets." While it is undisputed that appellant directs some amount and some types of lithium-ion batteries to Stanley Black and Decker and signed a "long-term" contract with Hewlett Packard in 2005, there is no evidence or allegation that these connections with Texas are in any way connected to appellee's claims. Appellees are not alleging that the batteries that appellant ships to Stanley Black and Decker or Hewlett Packard are among those that end up in Texas smoke shops for purchase by consumers, only that the same *type* of battery, the 18650 lithium-ion battery, is shipped by appellant to Stanley Black and Decker in Texas. Appellees generally allege that appellant markets its batteries to the U.S., but has not alleged that appellant has specifically targeted Texas, marketed this type of battery to Texas, or designed this battery for the Texas market. *See Spir Star*, 310 S.W.3d at 873 (holding that exercising jurisdiction over nonresident requires some additional conduct that indicates an intent or purpose to serve the market in the forum State). There is no evidence or allegation that appellant has sold or shipped a significant amount of its 18650 lithium-ion battery in Texas. There was no evidence or unnegated allegations that appellees' claims arose form appellant's Texas contacts—the sale of its batteries to Stanley Black and Decker or Hewlett Packard.

Appellees argue that *Semperit* supports specific jurisdiction in this case because "the defendant's sale of the same product generally in Texas was a substantial enough connection to an operative fact of the litigation even if the specific item that injured plaintiff was not shown to be sold to them in Texas." *See Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 508 S.W.39 569, 584 (Tex. App.—El Paso 2016, no pet.). In *Semperit*, the defendant sold millions

11

of dollars of hoses that it would have known were used in Texas and shipped much of its product to Texas. *Id*. The defendant's subsidiary actively marketed the defendant's goods to the Texas market. *Id*. "A specific sale to [a] sub-tier distributor resulted in the hose finding its way to Upton County where it is alleged to have failed." *Id*.

Unlike in *Semperit*, here there is no evidence that appellant has sold or shipped a significant amount of its 18650 batteries in Texas. Instead, the evidence and unnegated allegations only show that an unknown amount of 18650 lithium-ion batteries were sold to Stanley Black and Decker for use in power and mechanics tools. Unlike in *Semperit* where there was a connection between the defendant, the subsidiary, and the "sub-tier" distributor for marketing and selling the defendant's hoses (one of which allegedly failed), here there is no evidence of any relationship between appellant and anyone regarding the sale, distribution, marketing, or manufacturing of appellant's 18650 lithium-ion batteries for electronic cigarettes or to smoke shops in Texas. Appellant's manager attested that no such relationship exists.

The manager attested that it manufactures this type of battery "for use in specific applications by sophisticated companies," "does not design or manufacture lithium-ion power cells for sale to individual consumers as standalone batteries," and "does not distribute, advertise, or sell power cells directly to consumers, and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to distribute, advertise, or sell [appellant's] lithium-ion power cells directly to consumers as standalone batteries." While appellee alleged that appellant has targeted the U.S. market and derived substantial revenue from sales of lithium-ion batteries generally ($0.76 million daily), appellee did not allege or attempt to detail what amount was attributable to Texas sales of its lithium-ion batteries generally or

12

with relation to the 18650 lithium-ion battery. Appellee did not detail the amount or the types of lithium-ion batteries that are shipped to Texas by appellant. The record is devoid of any other connection between appellant, the 18650 lithium-ion battery, and Texas. *See Schexnider v. E-Cig Central, LLC*, No. 06-20-00003-CV, 2020 WL 6929872, *9 (Tex. App.—Texarkana Nov. 25, 2020, no pet.) (mem. op.) ("[T]here was no evidence that LG Chem had sold or shipped a significant amount of its HG2 batteries in Texas. There was no evidence that LG Chem or any of its authorized distributors had shipped or sold any HG2 batteries to E-Cig or any other Texas customer, except SBD. The evidence and unnegated allegations showed only that LG Chem sold an undetermined amount of its HG2 batteries to SBD for use in its battery packs, some of which came to Texas. There was no evidence or unnegated allegations that Schexnider's claims arose from LG Chem's only Texas contacts, the sale of its HG2 batteries to SBD for use in its battery packs."); *cf. LG Chem Am., Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483, at *7, *11 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet. h.) (mem. op.) (considering plaintiff's "undisputed allegations and evidence . . . that LGC designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas" and concluding that these allegations showed "that [the plaintiff's] claims arise from or relate to the manufacture, marketing, and sale of LGC's batteries in Texas, which injured [the plaintiff] in Texas")[3].

---

[3] Unlike in *Lg Chem America, Inc. v. Morgan*, in this case appellees did not allege or provide evidence that appellant "designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas." 2020 WL 7349483, at *7, *11. Instead, appellees alleged that appellant "markets and sells lithium-ion batteries directly to Texas businesses and consumers." Appellant's corporate representative attested that appellant does not market or sell lithium-ion batteries directly to consumers as "standalone" batteries, negating appellees' jurisdictional allegation. Appellees failed to bring forth any evidence to prove their jurisdictional allegation of

As the Supreme Court explained in *World-Wide Volkswagen* and reiterated again in *Bristol-Myers*, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980); *see also Bristol-Myers*, 137 S. Ct. at 1780–81.

## V.    CONCLUSION

Because we conclude that appellees have not shown that general or specific personal jurisdiction exists in Texas over appellant, we reverse the trial court's order and render an order of dismissal without prejudice of the claims asserted against LG Chem, Ltd.

/s/    Ken Wise
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Zimmerer.

---

marketing and selling lithium-ion batteries directly to Texas consumers. In *Morgan*, the plaintiff "produced more than 2,200 pages of spreadsheets that he argued showed" numerous shipments by LG Chem, Ltd., into Texas to various companies within Texas. *Id.* at *2. No such allegations or evidence was presented in this case.